IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| In re: | ) Chapter 13 |
| | ) |
| BIBIANA MARTHA RODRIGUEZ, | ) Case No. 11-bk-18847-RGM |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| BIBIANA MARTHA RODRIGUEZ, | ) |
| | ) Case No. 1:14-cv-01263-GBL-IDD |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Defendant-Appellee. | ) |

## MEMORANDUM OPINION & ORDER

THIS MATTER is before the Court on Appellant Bibiana Martha Rodriguez's ("Appellant") Appeal from Bankruptcy Court (Doc. 1). This case involves an appeal of rulings made in the United States Bankruptcy Court for the Eastern District of Virginia in Case No. 11-bk-18847-RGM in favor of Wells Fargo Bank, N.A. ("Wells Fargo" or "Appellee"). This case presents seven issues. The first issue is whether the Bankruptcy Court's Final Order in the Adversary Proceeding supersedes the rulings in the Chapter 13 case. The second issue is whether the Court should affirm the Bankruptcy Court's exclusion of Appellant's exhibits from being admitted into evidence. The third issue is whether the Court should affirm the Bankruptcy Court's finding that Wells Fargo did not violate the automatic stay by conducting several post-petition inspections of the Property. The fourth issue is whether the Court should affirm the Bankruptcy Court's grant of summary judgment on the issue of whether Wells Fargo provided

1

Appellant with notice of the index substitution. The fifth issue is whether the Court should affirm the Bankruptcy Court's grant of summary judgment on the issue of regulatory approval of the indexes. The sixth issue is whether the Court should affirm the Bankruptcy Court's finding that the 2008 Modification precludes Appellant from any subsequent loan modification under the Settlement Agreement. The seventh issue is whether the Court should affirm the Bankruptcy Court's dismissal of the fraud defense.

The Court AFFIRMS the Bankruptcy Court for seven reasons. First, the Court holds that the Final Order did NOT supersede the rulings in the Chapter 13 case because those rulings are final and are the law of the case. Second, the Court AFFIRMS the Bankruptcy Court's exclusion of the Appellant's exhibits from being admitted into evidence because the Bankruptcy Court's rulings on the admissibility of Appellant's exhibits were not an abuse of discretion as Exhibit 1 was not relevant to the issue whether Wells Fargo violated the automatic stay. Third, the Court AFFIRMS the Bankruptcy Court's finding that Wells Fargo did not violate the automatic stay because it was not clearly erroneous as the evidence in the record supports a finding that Wells Fargo did not attempt to take ownership of, or exert control over, the Property. Fourth, the Court AFFIRMS the Bankruptcy Court's ruling that Wells Fargo provided Appellant with notice of the index substitution because it is not clearly erroneous as there is ample evidence in the record supporting a finding that Wells Fargo mailed the notice to Appellant.

Fifth, the Court AFFIRMS the Bankruptcy Court's grant of summary judgment as to the regulatory approval of the indexes because it is not clearly erroneous as evidence in the record supports a finding that regulators approved Wells Fargo's indexes. Sixth, the Court AFFIRMS the Bankruptcy Court's finding that the 2008 Modification precludes Appellant from subsequent loan modification under the Settlement Agreement because it was not clearly erroneous as the

2008 Modification was an earlier loan modification. Seventh, the Court AFFIRMS the Bankruptcy Court's dismissal of the fraud defense because it was not clearly erroneous as Appellant never asserted a fraud defense in any of her counts.

## I. BACKGROUND

This case arises from a dispute regarding the validity of a proof of claim filed against the Appellant by Wells Fargo in her Chapter 13 Bankruptcy Case.

### A. Loan History

On December 21, 2006, Bibiana M. Rodriguez ("Appellant") received a $273,000 loan ("Loan") evidenced by an Adjustable Rate Mortgage Note ("Note") from World Savings Bank, FSB ("World") secured by a Deed of Trust ("Deed") on Appellant's home located at 9695 Lindenbrook Street, Fairfax, Virginia 22301 ("the Property"). (Doc 1-1 at 64, 71.) The Note allowed for a variable interest rate and allowed the Appellant to select her initial payment amount from a range of options approved by World. (*Id.*) The Note called for interest on the Loan to be calculated on the basis of the Golden West "Cost of Savings Index" ("GDW Index"), which consisted of the weighted average of the interest rates on demand deposits (such as savings and checking accounts), and term deposits (such as certificates of deposit). (MC Doc. 1 at 2; AP Doc. 14.) As the Note is governed and construed under Federal law, rules, and regulations, the substitution of the GDW Index for another index is allowed, provided the alternative index is approved by the relevant regulator. (MC Doc. 1 at 2, 5.)

On November 1, 2009, World merged with Wachovia Bank, N.A. ("Wachovia"). (Doc. 11 at 7.) Wachovia subsequently merged with Wells Fargo Bank, N.A. ("Appellee" or "Wells Fargo"). (*Id.*) Under 12 U.S.C. § 215a(e), Wells Fargo became the holder of the Note upon which this case is based. (*Id.*)

In June 2009 Appellant defaulted on the Loan and Wells Fargo commenced foreclosure proceedings. (Doc. 1-3 at 47–64.) The proceedings were put on hold while Wells Fargo reviewed Appellant's application for a loan modification. (Doc. 11 at 7.) In May 2010 Appellant again defaulted on the Loan, and Wells Fargo again initiated foreclosure proceedings. (*Id.*) Appellant then filed for Chapter 7 Bankruptcy. (*Id.*)

### B. Bankruptcy History

During the Chapter 7 proceedings, Wells Fargo applied for and received permission to proceed with foreclosure of the Appellant's home. (CH7 Doc. 17.) Appellant requested a third modification review, which led to the cancellation of the foreclosure proceedings while the application was processed. (Doc. 1-3 at 73, 126–28.) Following the denial of Appellant's application for loan modification review, Wells Fargo commenced foreclosure proceedings three additional times, all of which were cancelled due to the filling of loan modification requests which were subsequently denied. (*Id.* at 76–79, 86–89, 137–42.) In December 2011 Wells Fargo was again preparing for foreclosure when Appellant filed the Chapter 13 Bankruptcy on which this appeal is raised. (*Id.* at 99–103.)

In December 2011 Appellant filed for Chapter 13 bankruptcy. (MC Doc. 1.) In March 2012 Wells Fargo filed its first Proof of Claim. *See* (Claim 1-1.) Wells Fargo claimed arrearages of $62,807.38 for 30 monthly installment payments running from June 15, 2009 to November 15, 2011, with a variable interest rate of 6.29%. (*Id.* at Form B 10.)

### C. Procedural History

Appellant filed an objection to Wells Fargo's first Proof of Claim and initiated an Adversary Proceeding alleging six claims: injunction, specific performance, breach of contract, usury, declaratory judgment, and violation of the Real Estate Settlement Protection Act

("RESPA"). (CH13 Doc. 29.) On May 14, 2012, Appellant voluntarily dismissed the Adversary Proceeding under Federal Rule of Civil Procedure 41(a)(1)(A) and Federal Rule of Bankruptcy Procedure 7041. (CH13 Doc. No. 40.) In May 2012 Wells Fargo filed its second Proof of Claim for interest from May 15, 2009, through December 11, 2011—one day prior to the filing of Appellant's Chapter 13 petition. (Claim 1-2.) In January 2013 Appellant filed a complaint objecting again to Wells Fargo's Proof of Claim, initiating her second Adversary Proceeding. Wells Fargo then filed a Motion to Dismiss Appellant's Complaint. Appellant then filed a second Amended Complaint which alleged five counts: (I) disallowance of claim, (II) specific performance, (III) breach of contract, (IV) violation of RESPA, and (V) violation of the automatic Chapter 13 stay. (CH13 Doc. No. 78.)

On March 26, 2013, Wells Fargo moved to dismiss Appellant's Amended Complaint. (AP Doc. No. 18.) On May 8, 2013, the Bankruptcy Court held a hearing on the Motion to Dismiss and granted Wells Fargo's Motion to Dismiss regarding portions of Count I, Count II, Count III, and all of Count IV. (AP Doc. No. 43.) Wells Fargo filed a Motion for Summary Judgment on October 17, 2013, for the remainder of Counts I–IV, which the Bankruptcy Court granted on November 1, 2013. (AP Doc. 80.) Appellant moved for the Bankruptcy Court to reconsider its Order Granting Partial Summary Judgment, which was denied. (AP Docs. 76, 89.)

On April 10, 2014, the Bankruptcy Court held a trial on Count V, the sole remaining count. (AP Doc. 107.) At the conclusion of the trial the Bankruptcy Court found that the property inspections conducted by Wells Fargo did not constitute violations of the automatic stay imposed by 11 U.S.C. § 362(a) during Chapter 13 bankruptcy proceedings. On June 11, 2014, the Appellant moved for a new trial under Federal Rule of Civil Procedure 59. The Bankruptcy

Court denied the motion on July 22, 2014. (AP Doc. 109; AP Doc. 114.) Wells Fargo then filed the appeal in this case on August 5, 2014.

## II. DISCUSSION

### A. Standard of Review

A district court reviews findings of fact in bankruptcy proceedings under a clearly erroneous standard. FED. R. BANKR. P. 8013. "A finding is clearly erroneous when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made.'" *In re Regional Bldg. Systems, Inc.*, 320 F.3d 482, 485 (4th Cir. 2003) (quoting *In re Morris Commc'ns NC, Inc.*, 914 F.2d 458, 467 (4th Cir. 1990)). A bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Meredith*, 527 F.3d 372, 375 (4th Cir. 2008). Where issues present questions of both law and fact, facts are reviewed by a clearly erroneous standard, and legal conclusions derived from those facts are reviewed *de novo*. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996). A Bankruptcy Court's exclusion of evidence for relevancy will be overturned on appeal only due to abuse of discretion and only "overturn an evidentiary ruling that is arbitrary and irrational." *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011). If an abuse of discretion is found to have occurred, it may only be overturned if it affected the outcome of the case. *See United States v. Catone*, 769 F.3d 866 (4th Cir. 2014) (stating substantial rights are only affected if evidentiary ruling affected the outcome of the case); *Buckley v. Mukasey*, 538 F.3d 306, 317 (4th Cir. 2008) (holding an evidentiary ruling to be reversible only if it affects substantial rights).

### B. Analysis

The Court AFFIRMS the Bankruptcy Court for seven reasons. First, the Court holds that the Final Order did NOT supersede the rulings in the Chapter 13 case because those rulings are

final and are the law of the case. Second, the Court AFFIRMS the Bankruptcy Court's exclusion of the Appellant's exhibits from being admitted into evidence because the Bankruptcy Court's rulings on the admissibility of Appellant's exhibits were not an abuse of discretion as Exhibit 1 was not relevant to the issue whether Wells Fargo violated the automatic stay. Third, the Court AFFIRMS the Bankruptcy Court's finding that Wells Fargo did not violate the automatic stay because it was not clearly erroneous as the evidence in the record supports a finding that Wells Fargo did not attempt to take ownership of, or exert control over, the Property. Fourth, the Court AFFIRMS the Bankruptcy Court's ruling that Wells Fargo provided Appellant with notice of the index substitution because it is not clearly erroneous as there is ample evidence in the record supporting a finding that Wells Fargo mailed the notice to Appellant.

Fifth, the Court AFFIRMS the Bankruptcy Court's grant of summary judgment as to the regulatory approval of the indexes because it is not clearly erroneous as evidence in the record supports a finding that regulators approved Wells Fargo's indexes. Sixth, the Court AFFIRMS the Bankruptcy Court's finding that the 2008 Modification precludes Appellant from subsequent loan modification under the Settlement Agreement because it was not clearly erroneous as the 2008 Modification was an earlier loan modification. Seventh, the Court AFFIRMS the Bankruptcy Court's dismissal of the fraud defense because it was not clearly erroneous as Appellant never asserted a fraud defense in any of her counts.

1. Adversary Proceeding Final Order

The Court AFFIRMS the Bankruptcy Court's ruling because the Final Order did not supersede the rulings in the Chapter 13 case as those rulings are final and are the law of the case. Appellant argues that the Final Order's ruling that she "shall take nothing in this case" supersedes the provision of her confirmed plan which requires that she make monthly payments

7

to Wells Fargo. (Doc. 10 at 9-10.) The Plan provides that Appellant pay Wells Fargo $1,249.33 each month. (*Id.* at 10) (citing MC Doc. 150). That confirmed plan is now the law of the case and the payment amounts set forth therein cannot be changed by an order entered in an adversary proceeding. *See generally In re Keck*, No. 06-32392, 2007 WL 3125093 (Bankr. E.D. Tenn. Oct. 23, 2007) (applying the law of the case doctrine within a Chapter 13 case); *In re Stemple*, 361 B.R. 778, 796 (Bankr. E.D. Va. 2007) ("[O]rders of confirmation, like myriad orders entered by this Court, are considered final judgments, thus triggering the doctrines of res judicata . . . ."). Moreover, § 1329 of the Bankruptcy Code provides the mechanism for modifying the terms of a confirmed Chapter 13 plan. *See* 11 U.S.C. § 1329. Appellant presents no argument indicating that the Final Order was modified under § 1329. The Debtor is apparently continuing to make payments as directed under the Chapter 13 order. Because the Final Order does not override the terms of the confirmed plan, the Bankruptcy Court's ruling must be AFFIRMED.

2. Evidentiary Rulings

The Court AFFIRMS the Bankruptcy Court's rulings on the admissibility of Appellant's exhibits into evidence because the rulings were not an abuse of discretion as Exhibit 1 was not relevant to the underlying dispute. A Bankruptcy Court's exclusion of evidence for relevancy will be overturned on appeal only due to abuse of discretion and only "overturn an evidentiary ruling that is arbitrary and irrational." *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011). At the stage of litigation in question, the sole issue before the court was whether Wells Fargo had violated the automatic stay as the Dismissal Order and Summary Judgment Order resolved the other issues. (Doc. 11 at 11.) Appellant argues that the Bankruptcy Court should have admitted all of her exhibits (Exhibits 1-14 and 16) for lack of timely objection. (Doc. 10 at 11.)

Specifically, Appellant asserts that the Bankruptcy Court set deadlines for objecting to exhibits. However, a review of the hearing transcript demonstrates otherwise.

> THE COURT: Now I don't -- is there an order with respect to exhibits? I don't recall one.
>
> * * * *
>
> MR. BOLAND: My understanding is that the Court ordered the exhibits should be filed by March 11th.
>
> THE COURT: What's the date of that order?
>
> MR. BOLAND: The date of the order was -- I don't believe it was ever entered.
>
> THE COURT: Well, then it's not an order of the Court. All right.
>
> [G]o ahead and present your case, Mr. Boland.

Hr'g Tr. 18:3–14 (Apr. 10, 2014).

Further, Appellant only tendered five exhibits to be admitted into evidence: 1, 2, 3, 10, and 13. (Doc. 11 at 11.) Of those five, only Exhibit 1 was not admitted. (*Id.*) Exhibit 1 includes over twenty pages of Appellant's loan history with Wells Fargo. (*Id.*) It also includes Appellant's address. (*Id.*) Appellant argues that it was introduced in an attempt to show where she resided, while Appellee contends that it was introduced to show that the principal on the loan was increasing. (Doc. 11 at 11.)

The only remaining issue before the court was whether Wells Fargo violated the automatic stay by inspecting the Property *after* the petition date. Appellant petitioned for Chapter 13 bankruptcy in December 2011 and identifies nothing in the record showing that Exhibit 1 indicated what Appellant's address was post-petition. Accordingly, it is not relevant.

Moreover, the Bankruptcy Court's ruling will only be overturned if it affected the outcome of the case. *See United States v. Catone*, 769 F.3d 866 (4th Cir. 2014). Because Exhibit 1 included no information relevant to post-petition Property visits, the Court finds that admission of the exhibit would not have affected the outcome of the case.

Because the Court finds that the Bankruptcy Court did not abuse its discretion by holding Exhibit 1 was not relevant to the issue of post-petition Property visits and was thus inadmissible, the Bankruptcy Court's evidentiary rulings were not an abuse of discretion and must be AFFIRMED.

### 3. Automatic Stay

The Court AFFIRMS the Bankruptcy Court's ruling that Wells Fargo did not violate the automatic stay by inspecting the property because the ruling was not clearly erroneous as the evidence in the record supports a finding that Wells Fargo did not attempt to take ownership of, or exert control over, the Property. In order to establish a violation of the automatic stay, Appellant must demonstrate that Wells Fargo took an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Appellant acknowledges that the terms of the Deed allow for property inspections if, at the time of the inspection, the Lender gives notice stating a reasonable purpose of the inspection. (Doc. 10 at 11.)

Appellant testified that at each of the three post-petition property inspections, she was asked if she lived at the Property. Hr'g Tr. 43:8–25 (Apr. 10, 2014). Based on this testimony, the Bankruptcy Court found that "[t]he only purpose for which Wells Fargo or its employees or agents inspected the Property was to verify that [Appellant] still lived there . . . ." (AP Doc. 107 ¶ 2.) The Court finds that Appellant's testimony sufficiently showed that Wells Fargo's actions

were permitted by the Deed and that "no employee or agent of Wells Fargo took any act to collect a debt, made any attempt to take possession of the Property, or made any threatening or intimidating act during any of the Property inspections" in violation of 11 U.S.C. § 362(a)(3). (Doc. 11 at 14–15.) Accordingly, because the Bankruptcy Court's ruling was not clearly erroneous, the ruling must be AFFIRMED.

4. Notice of Index Substitution

The Court AFFIRMS the Bankruptcy Court's ruling that Wells Fargo's notice of the index substitution was proper because the ruling was not clearly erroneous as there is ample evidence in the record suggesting that Wells Fargo mailed Appellant notice. The Bankruptcy Court relied upon both an affidavit and an exhibit showing what notice of the index substitution often looked like to support a finding that Appellant received proper notice under the Note. Hr'g Tr. 56:25–57:19 (Apr. 10, 2014); (AP Doc. 19-7). The court reasoned that a mortgage company does not have to keep an electronic copy of every letter sent via mail merge. Hr'g Tr. 56:25–57:19 (Apr. 10, 2014).

Appellant argues that the Bankruptcy Court erred as it considered only whether notice was sent and not the sufficiency of the notice. Appellant cited 12 C.F.R. § 226.20(c) for this contention. Section 226.20(c) governs subsequent disclosure requirements for variable-rate adjustments and provides that:

> *An adjustment to the interest rate* with or without a corresponding adjustment to the payment in a variable-rate transaction subject to § 226.19(b) is an event requiring new disclosures to the consumer. At least once each year during which an interest rate adjustment is implemented without an accompanying payment change, and at least 25, but no more than 120, calendar days before a payment at a new level is due, the following disclosures, as applicable, must be delivered or placed in the mail:

>   (1) The current and prior interest rates.
>
>   (2) The index values upon which the current and prior interest rates are based.
>
>   (3) The extent to which the creditor has foregone any increase in the interest rate.
>
>   (4) The contractual effects of the adjustment, including the payment due after the adjustment is made, and a statement of the loan balance.
>
>   (5) The payment, if different from that referred to in paragraph (c)(4) of this section, that would be required to fully amortize the loan at the new interest rate over the remainder of the loan term.

12 C.F.R. § 226.20(c) (emphasis added).

The Court holds that 12 C.F.R. § 226.20(c) does not apply to the notice in question as the notice related to an index substitution that did not change Appellant's interest rate for the period in question. (AP Doc. 19-7 at 3–5.) Further, Appellant's argument that 12 C.F.R. § 560.35 requires that the alternative index comply "with both the limits contained in regulation and the disclosure requirements of [12 C.F.R. § 560.210(a)]," *see* Doc. 10 at 14, is not persuasive as Section 560.210(a) pertains to "adjustments to the interest rate, payment, balance, or term to maturity." 12 C.F.R. § 560.210(a). Section 560.210(a)'s plain language does not state that it applies to indexes. *See Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011) ("When interpreting statutes we start with the plain language. It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (citations and internal quotation marks omitted)). Because the index substitution did not adjust the interest rate, payment, balance, or term to maturity, the Court holds that 12 C.F.R. § 560.210(a) is inapplicable.

Thus, the Court holds that the Bankruptcy Court was correct in focusing its analysis on whether the notice was sent and not its sufficiency. The Court further finds that there is ample evidence in the record supporting the Bankruptcy Court's finding that Wells Fargo mailed Appellant notice of the index substitution. The Bankruptcy Court relied on the sample notice letter in AP Doc. 19-7 and found that Appellant was provided with notice via a mail merge sent out by a contractor. Hr'g Tr. 56:25–57:19 (Apr. 10, 2014). Appellant does not contest this finding and the record does not provide the Court with any reason to disturb it. Accordingly, the Court AFFIRMS the Bankruptcy Court's ruling that Wells Fargo provided Appellant with notice of the index substitution because the ruling was not clearly erroneous.

5. Regulatory Approval of Indexes

The Court AFFIRMS the Bankruptcy Court's grant of summary judgment on the issue of regulatory approval of indexes because the finding was not clearly erroneous as evidence in the record shows that regulators impliedly approved the indexes as a matter of law. The regulations governing the Office of Thrift Supervision's ("OTS") approval of an adjustable rate mortgage index are set forth in 12 C.F.R. § 560.35(d)(2) and (3). A lender desiring to use a proprietary index must file a notice with the OTS. Unless the OTS notifies the lender of "supervisory concerns" or "significant issues of law or policy" within 30 days, the lender "may use" the new index. *See* 12 C.F.R. §§ 516.1(a), 516.280(b).

12 C.F.R. § 34.2217 establishes a similar procedure for the Office of the Comptroller of the Currency ("OCC") approval of a proprietary index. The lender must give notice to the OCC, and unless the OCC notifies it of "supervisory concerns" or "significant issues of law or policy" within thirty days, the lender "may use" the new index. Appellant agreed that the OTS's and

OCC's regulations would govern Wells Fargo's selection of the indexes for her loan. (Doc. 1 at 64, 68.)

Here, after reviewing the evidence, the Court finds that the indexes were approved as Wells Fargo notified both the OTS and OCC about the index substitutions and neither entity objected to them. (*See* AP Doc. 163; Doc. 11 at 18; Hr'g Tr. 56:13-24 (Oct. 9, 2013)). The record contains evidence of correspondence between regulators and Wells Fargo contained in the Jefferson Declaration, (Doc. 16), showing that (1) Wells Fargo notified OTS of its proposal to change its indexes to an index called the "Wachovia COSI," and (2) that Wells Fargo notified the OCC that the Wachovia COSI was unavailable and that Wells Fargo proposed to substitute it with the Wells Fargo COSI. *See, e.g.*, (Doc. 16-7.) Thus, Wells Fargo received proper regulatory approval under 12 C.F.R. § 560.35(d)(2), (3) and 12 C.F.R. § 34.2217. Appellant contests whether the regulators approved the indexes but fails to address the "silent approval" of the indexes. *See* (Doc. 10 at 16–19.) Because the correspondence between the regulators and Wells Fargo in the Jefferson Declaration supports such a finding, the Court holds that the Bankruptcy Court's finding was not clearly erroneous. Accordingly, it must be AFFIRMED.

6. Modification Agreement

The Court AFFIRMS the Bankruptcy Court's finding that the 2008 Modification precludes Appellant from subsequent loan modification under the Settlement Agreement because it was not clearly erroneous as the 2008 Modification was an earlier loan modification. Appellant claimed that she never received a good faith review for a "loan modification" pursuant to the requirements of the Settlement Agreement and that Wells Fargo was not permitted to proceed to foreclosure until she received written notice of the results of such loan modification review. (Doc. 1 at 69–71.)

Under the terms of the Settlement Agreement, eligible loans were to receive either (1) a modification under the Department of Treasury's Home Affordable Modification Program, or (2) a modification under Wells Fargo's Mortgage Assistance Program 2, under which the loan is converted to a fully-amortizing loan and the negative amortization feature is eliminated. *See* Settlement Agreement ¶ VI.E.2. Appellant asserts that as a class member she is entitled to a loan modification under the terms of the Settlement Agreement. However, the plain language of the Settlement Agreement precludes her from such an entitlement.

Section VI.E.4 of the Settlement Agreement specifically provides that "Settlement Class Members who have received earlier loan modifications not pursuant to this Agreement will not be eligible to be considered for new loan modifications under this Agreement." (Doc. 1 at 86–147, § VI.E.4.) Appellant received such an earlier modification but contends that it was temporary. (Doc. 10 at 20.)

On February 7, 2008, Appellant entered into a "Modification Agreement," which altered the terms of the Note (the "2008 Modification"). Under the 2008 Modification some of the Note's terms were modified during the twelve months ending February 15, 2009, *after which the original terms of the Note again became effective.* (*See* Doc. 10 at 20; Doc. 11 at 20.) The Bankruptcy Court found that the 2008 Modification was an "earlier loan modification" that in part included a material change in rights for a set period of time. Hr'g Tr. 58:11–14 (Oct. 8, 2013.)

After reviewing the evidence, the Court finds that the 2008 Modification was an earlier loan modification. Thus, Section VI.E.4 of the Settlement Agreement precluded Appellant from receiving an additional loan modification. Accordingly, the Bankruptcy Court's ruling was not clearly erroneous and must be AFFIRMED.

7. <u>Fraud Defense</u>

The Court AFFIRMS the Bankruptcy Court's dismissal of the fraud defense because Appellant never asserted a fraud defense. Appellant did not include any fraud defense in Counts I through V but claims that the First Amended Complaint contained sufficient facts that, if proven true, would have required the Court to deny enforcement of the 2008 Modification because it was fraudulent. Because that defense was not properly asserted before the Bankruptcy Court, dismissal of the fraud defense was appropriate and must be AFFIRMED.

## III. CONCLUSION

The Court AFFIRMS the Bankruptcy Court for seven reasons. First, the Court holds that the Final Order did NOT supersede the rulings in the Chapter 13 case because those rulings are final and are the law of the case. Second, the Court AFFIRMS the Bankruptcy Court's exclusion of the Appellant's exhibits from being admitted into evidence because the Bankruptcy Court's rulings on the admissibility of Appellant's exhibits were not an abuse of discretion as Exhibit 1 was not relevant to the issue whether Wells Fargo violated the automatic stay. Third, the Court AFFIRMS the Bankruptcy Court's finding that Wells Fargo did not violate the automatic stay because it was not clearly erroneous as the evidence in the record supports a finding that Wells Fargo did not attempt to take ownership of, or exert control over, the Property. Fourth, the Court AFFIRMS the Bankruptcy Court's ruling that Wells Fargo provided Appellant with notice of the index substitution because it is not clearly erroneous as there is ample evidence in the record supporting a finding that Wells Fargo mailed the notice to Appellant.

Fifth, the Court AFFIRMS the Bankruptcy Court's grant of summary judgment as to the regulatory approval of the indexes because it is not clearly erroneous as evidence in the record supports a finding that regulators approved Wells Fargo's indexes. Sixth, the Court AFFIRMS

the Bankruptcy Court's finding that the 2008 Modification precludes Appellant from subsequent loan modification under the Settlement Agreement because it was not clearly erroneous as the 2008 Modification was an earlier loan modification. Seventh, the Court AFFIRMS the Bankruptcy Court's dismissal of the fraud defense because it was not clearly erroneous as Appellant never asserted a fraud defense in any of her counts.

Accordingly, it is hereby

**ORDERED** that Appellant Bibiana Martha Rodriguez's Appeal from Bankruptcy Court (Doc. 1) is **DENIED**; and it is further

**ORDERED** that the Bankruptcy Court's rulings are **AFFIRMED**.

**IT IS SO ORDERED.**

ENTERED this 29th day of January, 2015.

Alexandria, Virginia
1/29/2015

/s/
Gerald Bruce Lee
United States District Judge